# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**LOURDES NEGRÓN-MERCADO**

**Plaintiff,**

**v.**

**ROBERTO RAMÍREZ-KURTZ, et al.,**

**Defendants.**

**CIVIL NO. 17-1314 (GAG)**

## OPINION AND ORDER

Lourdes Negrón-Mercado ("Plaintiff") filed her complaint on March 3, 2017, alleging political discrimination at the hands of the Mayor Roberto Ramírez-Kurtz ("Ramírez-Kurtz") and the Municipal Government of Cabo Rojo (collectively "Defendants") in violation of the First Amendment. (Docket No. 1). Plaintiff's Complaint presented additional claims of political discrimination against Anisa Bonilla Irizary ("Bonilla-Irizarry"), Luis Rodriguez ("Rodriguez"), the Municipal Government of Cabo Rojo and two unnamed defendants, as well as equal protection violations and imposition of punitive damages under 42 U.S.C § 1983. (Docket No. 1).

Before the Court are Defendants' Motion for Summary Judgment (Docket No. 25) and Plaintiff's Reply in Opposition to Summary Judgment (Docket No. 35). Plaintiff, in her reply, "concedes that summary dismissal of her equal protection claims is warranted." Id. at 4. Additionally, Plaintiff accepts "dismissal of her claims against defendants Bonilla-Irizarry and Rodriguez," as well as Defendants' immunity to punitive damages under a 1983 claim. Id. However, Plaintiff, maintains her First Amended political discrimination claim against Ramírez-

**Civil No. 17-1314 (GAG)**

Kurtz. Id. As such, the Court shall only address the latter claim. For the reasons provided below the Court **DENIES** Defendants' Motion for Summary Judgment. (Docket No. 25).

I. **Relevant Factual Background**

The uncontested relevant facts are as follows. In 2005 Plaintiff was hired by the Municipality of Cabo Rojo for a trust position of "Internal Auditor." (Docket Nos. 25-1 at ¶ 1, 35-1 at ¶ 1). Plaintiff was later appointed to a transitory position of Sub-Director of the Federal Programs Department by the then mayor, Perez Rodríguez-Rodríguez. (Id. at ¶ 2; ¶ 2). Rodríguez-Rodríguez prepared a letter to inform Plaintiff that her transitory appointment would end on January 18, 2013. (Id. at ¶ 4; ¶ 4). Plaintiff became aware of said letter when it was attached to a January 15, 2013 letter signed by the newly appointed mayor, Ramírez-Kurtz. (Id. at ¶ 5; ¶ 5). Upon receiving the letter, Plaintiff requested Ramírez-Kurtz extend her appointment. Plaintiff referred to her political stance and support of the prior administration. (Id. at ¶ 6; ¶ 6). Ramírez-Kurtz in turn appointed Plaintiff to the transitory position of Administrative Assistant to the Federal Programs Department. (Id. at ¶ 7; ¶ 7). Ramírez-Kurtz warned Plaintiff that her employment was contingent on the availability of funds. (Id. at ¶ 8; ¶ 8). Plaintiff's salary was subsidized by federal funds. (Id. at ¶ 10; ¶ 10). Plaintiff remained in her appointment until March 2016 when she received a letter informing her that her appointment would not be renewed. Id. at ¶ 9; ¶ 9.

After receipt of the letter Plaintiff approached Bonilla-Irizarry, the Human Resources Director. (Id. at ¶ 12; ¶ 12). While speaking with Bonilla-Irizarry, Plaintiff theorized that her termination may have been as a result of her political activities and support of the rival party's candidate for primary election. Id. Plaintiff stated to Bonilla-Irizarry that Rodriquez (the Director of the Federal Programs Department for the Municipality of Cabo Rojo) had informed her back in

**Civil No. 17-1314 (GAG)**

February 2016, that Ramírez-Kurtz implied he was aware of Plaintiff "politicking for Jorgito." (Docket Nos. 25-1 at ¶ 16; 35-1 at ¶ 16). Additionally, Plaintiff claimed that Ramírez-Kurtz said to her that "[m]y employees in the municipality cannot be involved in political campaigns." (Id. at ¶ 17; ¶ 17). In response to Plaintiff's concerns, Bonilla-Irizary allegedly responded that Ramírez-Kurtz had been "somewhat upset" that "he had [an] employee who was working on opposing politics." (Id. at ¶ 12; ¶ 12).

Plaintiff's salary was provided by federal funding grants assigned by the U.S. Department of Housing and Urban Development ("HUD") that were subject to conditions. (Id. at ¶ 10; ¶ 10). Federal agency policy does not permit that an excess of 20-25% of a Community Development Block Grant ("CDBG") be directed towards payroll and/or related expenses. Id. A CDBG payroll which exceeds such limits constitutes a violation of federal policy. During the fiscal years 2012/2013 through 2016/2017 the CDBG payroll did exhaust more than 20-25% of the grant four times, in violation of the federal policy. (Id. at ¶ 22; ¶ 22). Plaintiff was not privy to such information. (Id. at ¶ 19; ¶ 19). On April 27, 2018, HUD issued a CDBG Monitoring Review, which held that the "Activity Delivery Costs" were "unreasonable," and that "the Municipality commits more money in municipal employees to manage the Housing Rehabilitation Program that the Housing Rehabilitation per se." (Id. at ¶ 23; ¶ 23). Plaintiff at the time of the report had already been informed that her contract would not be renewed. (Docket No. 35-1 at ¶ 23).

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue

is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

### III. Legal Analysis

Plaintiff brings this action through 42 U.S.C. § 1983. To establish section 1983 liability, plaintiffs must demonstrate by a preponderance of the evidence that: "(1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006) (citing Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005)). For the purposes of section 1983 liability, Puerto Rico is the functional equivalent of a state. Rojas-Velázquez v. Figueroa-Sancha, 676 F.3d 206, 209 (1st Cir. 2012) (citation omitted). Since Defendants clearly acted under color of Puerto Rico law, each claim turns on whether Defendants impermissibly discriminated against Plaintiff. For a prima facie claim of political discrimination there must be four elements present: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Reyes-Orta v. P.R. Highway & Transp., 811 F.3d 67, 73 (1st Cir. 2016). In the case at hand, Defendants concede that Plaintiff successfully demonstrated the first three prongs. (Docket Nos. 25; 35). As such, the only issue in contention is whether Plaintiff's political affiliation was a substantial or motivating factor in the decision not to renew Plaintiff's position.

### A. Substantial or Motivating Factor

Plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action. See Padilla-García v. Rodriguez, 212 F.3d 69, 74 (1st Cir. 2001). "[A] government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Galloza v. Foy, 389 F.3d 26, 28 (1st

Cir. 2004) (citing <u>Elrod v. Burns</u>, 427 U.S. 347, 350, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)). In determining whether political affiliation was a substantial or motivating factor for the adverse employment action,

> [t]here is an ultimate constitutional question of "but for" causation. As the Supreme Court clarified . . . at least with certain types of claims, proof of an improper motive is not sufficient to establish a constitutional violation -- there must also be evidence of causation.

<u>Sanchez-Lopez v. Fuentes-Pujols</u>, 375 F.3d 121, 130-31 (1st Cir. 2004) (internal citations omitted). "To adopt a view of causation that focuses solely on whether protected conduct played a part in an employment decision would put an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied otherwise." <u>Id.</u> at 131. Thus, to establish the causation, the "plaintiff bears the burden of producing sufficient evidence from which a jury may infer that plaintiff's constitutionally protected conduct was a substantial or motivating factor behind the adverse employment action." <u>Maymi v. Puerto Rico Ports Auth.</u>, 515 F.3d 20, 28 (1st Cir. 2008) (citing <u>Acevedo-Diaz v. Aponte</u>, 1 F.3d 62, 66 (1st Cir. 1993)). "[A] plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." <u>Correa-Martínez v. Arrillaga-Beléndez</u>, 903 F.2d 49, 53 (1st Cir. 1990). "Under certain circumstances, proximity in time between the protected activity and the alleged retaliation is circumstantial evidence of motive. . . timing may be suggestive of discriminatory animus in conjunction with other evidence." <u>McCue v. Bradstreet</u>, 807 F. 3d 334, 336 (1st Cir. 2015).

Defendants argue that summary judgment is warranted as they contend the facts "do not allow [P]laintiff to meet the causation requirement in the fourth prong of the prima facie standard." (Docket No. 25 at 8, 12). Specifically, they point to their knowledge of Plaintiff's political

**Civil No. 17-1314 (GAG)**

activities years prior to the adverse employment action.[1] (Docket 25 at 8). While it is true that timing could be indicative of motive, that does not equate that proximity in timing is by any means a requirement for a political discrimination claim. The fact that there was a gap in time from when Defendant initially came to know of Plaintiff's political activities and his ultimate alleged unlawful action does not negate that political discrimination *could* have played a substantial or motivating factor in his decision not to renew Plaintiff's contract. Defendants hypothesize that had Mayor Ramírez-Kurtz wished to "punish" Plaintiff for her political affiliations, he would have not retained Plaintiff when he originally took office. "It is reasonable to infer that, had Mayor Ramírez-Kurtz wanted to exact any sort of political vengeance against plaintiff he would have merely allowed the previous administration's decision to come to pass and be rid of a political adversary." (Docket No. 25 at 9-10). Defendants are jumping the gun. Just because Defendant did not at first possibility discriminate against Plaintiff does not preclude him from engaging in any future acts of political discrimination. Timing is suggestive, not outcome determinative. See McCue, 807 F. 3d at 336. Furthermore, just because Plaintiff's political affiliation was known previously does not mean it could not serve as a motivation for non-renewal.

Defendants further proffer that most of Plaintiff's coworkers were NPP supporters. Defendants contend this "negates any of the usual contentions of a purge of the political opposition." (Docket No. 25 at 10). Be that as it may, Plaintiff is not claiming that Defendants partook in a political purge in which they terminate every employee who supported the NPP. Rather, Plaintiff is claiming that due to her very vocal support and active participation in NPP campaigns, Defendant retaliated and took an adverse employment action against her. (Docket No.

---

[1] Ramírez-Kurtz had been aware of Plaintiff's political affiliation and activities since 2008. (Docket No. 25 at 8)

**Civil No. 17-1314 (GAG)**

35).[2] Defendants argue that as Ramírez-Kurtz comments were not made during a conversation about Plaintiff's nonrenewal that the comments made have no subsequent significance. The Court disagrees. (Docket No. 25 at 11). While Defendants "simply fail to see how three alleged comments regarding the Mayor's knowledge of plaintiff's activism can serve to establish an inference of discriminatory animus," (id. at 12) that is not to say that a jury would find the same to be true. Given the alleged comments and vocalized disdain by Defendants regarding Plaintiff's political activities it is possible Defendants actions were substantially motivated by Plaintiff's political affiliation. There are issues of material fact as to whether Plaintiff's political activities played a role in her non-renewal. As such summary judgment would be inappropriate at this time. Defendants do however present the Mt. Healthy affirmative defense.

### A. Mt. Healthy Defense

Defendants argue that even if the Court was to hold that Plaintiff's political affiliation was "a 'motivating factor' in [the] adverse employment decision, *the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct*." Sanchez-Lopez 375 at 130-31 (internal citations omitted). Commonly known as a Mt. Healthy defense. See Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle, 429 U.S. 274 (1997). A successful Mt. Healthy defense requires a Defendant to demonstrate to the fact finder that they would have made the same decision even if the illegitimate motivation had not been a factor. Reyes-Orta v. P.R. Highway & Transp., 811 F.3d 67, 73 n. 3 (1st Cir. 2016).

> Mt. Healthy defense, at the summary judgment stage, requires a defendant to show that the record would compel a reasonable jury to find that the adverse action would have occurred anyway, not merely that such action would have been warranted

---

[2] Additionally, in the exhibits presented by Defendants there is a separate action filed by several NPP coworkers alleging political discrimination, which counters Defendants point that other NPP supporters have faired well. See Case No. 18-cv-1010 (PAD); See also Docket No. 38-3.

8

anyway. To hold otherwise would expand the Mt. Healthy defense beyond its rationale.

McCue 807 F.3d at 336. The test is what would have happened anyway, regardless of plaintiff's political affiliation. Id.; see also Mt. Healthy, 429 U.S. at 287. "In a political discrimination case, the defendant bears the burden of persuading the factfinder that its reason is credible. The evidence by which the plaintiff established her prima facie case may suffice for a factfinder to infer that the defendant's reason is pretextual and to effectively check summary judgment." Reyes-Orta, 811 F.3d at 73 n.3. "The defendants could still meet their summary-judgment burden by showing that no sensible jury would reject their defense that they would have taken *the same action* against [him/her] in the absence of the protected conduct." (Docket No. 25 at 14)(citing Soto-Padró v. Public Bldgs. Auth., 675 F.3d 1, 5 (1st Cir. 2012)(emphasis ours).

Defendants explain that Plaintiff's position was not renewed due federal CDBG fund policy, which limits payroll expenses. (Docket No. 25). Plaintiff notes that Defendants have failed to provide the exact statute/policy that mandates that CDBG grant funds used for payroll and related expenses cannot exceed 20-25%. (Docket No. 35 at 10; Docket Nos. 25). Plaintiff, in her sworn deposition, however agreed that payroll expenses excess of 20-25% of the grant would not be allowed "as [she] understand[s] it." (Docket Nos. 25 at 15; 35-1 at ¶ 10-11; 25-2 at 4 ¶ 20). Notwithstanding, Plaintiff later appears to bring this policy somewhat into question. (Docket No. 35 at 10). Plaintiff argue that Defendants' Mt. Healthy defense is void of "evidence supporting that Mayor Ramírez-Kurtz's decision was, in fact, based on an allegedly unlawful or unreasonable use of CDBG funds. Id. Plaintiff highlights that Defendants' have not demonstrated that Mayor Ramírez-Kurtz was aware of the CDBG funds policy. Id. Plaintiff argues that as HUD's CDBG Monitoring Review, "Feliciano-Diaz's Certification, and De La Rosas' letter were issued more than two years after Negron-Mercado's appointment was not renewed," no evidence suggests

**Civil No. 17-1314 (GAG)**

Mayor Ramírez-Kurtz's knowledge of such a policy prior to Plaintiff's non-renewal. (Docket No. 35 at 10). Defendants counter that they were aware of the "payroll vs. work performed ratios." (Docket No. 38 at 4). Though they present no evidence to demonstrate such, assuming this is true, given the fact that Defendants had been exceeding the ratio for three years prior, peaking at a whopping 55.1% of funds allocated for payroll during 2013-2014 – a full 25% above their alleged cap– it is perplexing why they did not act earlier. (Docket No. 25 at 16). This in conjunction with the lack of concrete evidence as to the CDBG policy, beyond Plaintiff's understanding, presents an issue of fact as to whether there was a legitimate reason for terminating Plaintiff.

At the time which Plaintiff's position was not renewed the Municipality was allocating well over the alleged 25% cap. (Docket No. 25 at 15). In 2016-2017, the fiscal year in which Plaintiff lost her appointment, payroll expenses were lowered by almost 5%. Id. at 16. Defendants have argued that there was a need for the Municipality to reduce payroll funds. Id. However, they fail to explain how they selected who would be terminated or which contracts would not be renewed. Nor have they sufficiently explained the 5% reduction in payroll.[3] Defendants contest that another "transitory NPP-affiliated employee," Kathrine Casino Cancel, has had her contract renewed since 2016.[4] (Docket No 38 at 4). The evidence Defendants provide, a claim by Katherine Carrion Cancel (possible alias Katherine Casino Cancel), alleges political discrimination against the same Defendants. The complaint was filed in January 2018, severely undermining their

---

[3] Defendants in their Motion for Summary Judgment provide that the amount spent on payroll for the fiscal year 2015-2016 was $65, 439.85. (Docket No. 25 at 16). Thus 5% would be $3,271.99, which is a reduction in payroll that could very well be exclusively contributed to Plaintiff.

[4] However, the evidence presented by Defendants to prove NPP affiliation refers to a "Kathrine Carrion Cancel." (Docket 38-3). Furthermore, the Official Certification by the Director of Human Resources explicitly states, "our records show that there has never been an employee by the name of Katherine Carrion Cancel working at the Federal Programs Division," though a Katherine Casino Cancel does. (Docket No. 38-2). Defendants make no effort to clarify this discrepancy.

**Civil No. 17-1314 (GAG)**

assertion that retention of Katherine Carrion Cancel counters claims of political discrimination.[5] (Docket No. 38-3). Defendants additionally point to the fact that 125 transitory employees have had their appointments expired since March 2016. (Docket No. 38 at 4) Yet, they do not explain how the salaries for the transitory employees were funded. (Docket No. 38-4).

Viewing the record evidence in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff's non-renewal was substantially motivated by political discrimination and the same action would not have been taken otherwise. Defendants' have not convinced the Court that Plaintiff, in spite of her political activities, would have faced the same adverse employment action. There are genuine issues of material fact as to whether Plaintiff's contract was not renewed due to political discrimination. Thus, summary judgment is inappropriate.

**IV.   Conclusion**

For the reasons stated above, Defendants' Joint Motion for Summary Judgment (Docket No. 25) is **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 27th day of February 2019.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[5] Similar cases by this Court in which a Mt. Healthy Defense was granted in favor of Defendant highlight the significance of lack of evidence that individuals from a particular party were targeted. See Reyes-Perez v. State Ins. Fund Corp., 755 F.3e 49, 54 (1st Cir. 2014); see also Sanchez Lopez v. Fuentes-Pujols, 375 F. 3d 121, 132 (1st Cir. 2004). In stark contrast with the case currently before the Court in which there is some presented evidence that a party was targeted.